**FILED - GR**

November 7, 2025 4:10 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:JMW  SCANNED BY: JJ /11-10

## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

*John Timothy Klees,*

                             Plaintiff

    vs.

*the City of Grand Rapids,* a municipal corporation,

*Kent County (MI),* a Michigan county,

*and Bradley J. Heugel, Christopher R. Becker, J. Michael Christensen, Ahyoka Saas, and Lyndsay Ann Woods,* individuals

                            Defendants

_____/

File No.:
Hon:

**1:25-cv-1395**
**Paul L. Maloney**
**United States District Judge**

**JURY DEMANDED**

John T. Klees (P42185) *in pro per*
270 Langlois Drive SE
Grand Rapids, MI  49546
(616) 608-1144

## COMPLAINT

*Now Comes* the Plaintiff John Timothy Klees appearing *in pro per* and states as follows:

### Parties, Venue & Jurisdiction

1.      This action arises primarily under 42 USC 1983, which allows for a civil action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.

2.      Jurisdiction is conferred by 28 USC 1331, 1343(a)(1), (3) and (4).

3.      Supplemental or ancillary jurisdiction is also conferred by 28 USC 1367.

4.      Plaintiff is a resident of Grand Rapids Township, in Kent County, Michigan.

5.      Defendant City of Grand Rapids is a municipal corporation situated in Kent County, Michigan.

6.      Defendant Kent County is a county in the State of Michigan.

7.      Defendant Christopher R. Becker ("Defendant Becker" is a resident of Ada Township, in Kent County, Michigan, and at all material times was employed as prosecutor by/for

Kent County and the City of Grand Rapids.

8.     Defendant Bradley J. Heugel ("Defendant Heugel") is a resident of Allendale Township, in Ottawa County, Michigan, and at all material times was employed by the City of Grand Rapids' Police Department as a police officer.

9.     Defendants Ahyoka Saas ("Trash-Thrower Saas" herein) and Lyndsay Ann Woods ("Defendant Woods") are residents of the City of Grand Rapids, in Kent County, Michigan.

10.    Defendant J. Michael Christensen is a resident of Tallmadge Township, in Ottawa County, Michigan, and at all material times was employed by Kent County as a magistrate.

11.    Venue is proper in the United States District Court for the Western District of Michigan – Southern Division because all of the parties are residents of or situated within Ottawa or Kent Counties, Michigan, and the main event(s) comprising the subject matter of this Complaint and producing injuries to the Plaintiff occurred in the City of Grand Rapids, Kent County, Michigan.

12.    The amount in controversy exceeds $75,000, exclusive of interest and costs.

### General Allegations

13.    The main event(s) comprising the subject matter of this Complaint and producing injuries to the Plaintiff occurred in the City of Grand Rapids, Kent County, Michigan

14.    When the events alleged in this complaint occurred, Defendants Heugel and Becker, and other police officers present at the scene, were acting within the scope of their employment and under color of law.

15.    At all material times, Defendant City of Grand Rapids employed Defendant Heugel and other police officers present at the scene, and is liable for their acts, and is also liable because of its policies, practices, and customs (and failure to properly train its civil servants) which led to this complaint.

3

16.    On Thursday, May 8, 2025, at approximately 3:30 pm EST, Plaintiff had just begun driving his automobile (i.e., a silver 2015 Nissan Altima) ("Plaintiff's Nissan") from his place of employment (at 200 Ottawa Ave NW #500, Grand Rapids MI 49053), toward his residence (at 270 Langlois Drive SE, Grand Rapids, MI 49546) along his usual route, and was idling in the left-hand turn lane on south-bound Ottawa Ave NW waiting for the traffic light to change from red to green so he could to turn left onto eastbound Ionia Ave NW (and then onto northbound Ionia Ave NW toward the I-196 freeway).

17.    While Plaintiff was idling in his automobile waiting for the traffic light to change so he could turn left, he observed a group of people assembled outside of the Kent County Courthouse at the northeast corner of Ottawa Ave NW and Lyon Street NW in downtown Grand Rapids, who were protesting the jury's (11-1) verdict in the case of *People v. Christopher Paul Schurr*, Kent County Circuit Court file no. 22-10260-FC (referred to herein as the "Underlying Schurr Case").

18.    While Plaintiff was idling in his automobile, Plaintiff rolled down his window and attempted to engage the assembled protestors in conversation by suggesting that they "choose their battles more wisely" due to his belief that: (i) the defendant in the Underlying Schurr Case should not have been charged by Defendant Becker in the first place; (ii) the decision to prosecute him was an extremely poor exercise of prosecutorial discretion by Defendant Becker (due to the alleged victim's conduct while being apprehended by police); (iii) protests of the jury decision in the Underlying Schurr Case were based solely on shallow/cosmetic appearances of racial motivations (i.e., because in that case the defendant Schurr is Caucasian and the alleged victim was African American); and (iv) protests of the jury decision in the Underlying Schurr Case would do more damage than good to "big picture" long-term race relations because a certain segment of our society will be more inclined to lump all future protests into the same category as the Underlying

Schurr Case and dismiss them as similarly "unjustified".

19.    By suggesting to the assembled protestors that they "choose their battles more wisely", Plaintiff was exercising his First Amendment right of free speech, but in response Plaintiff immediately encountered "fighting words" from the protestors, one of whom quite loudly/vocally and repeatedly asked Plaintiff "are you still f*cking your sister?" (referred to herein as the "First Instance of Fighting Words").

20.    After receiving said "fighting words", Petitioner proceeded to turn left and before the turn was even completed another car (driven by Defendant/Trash-Thrower Saas) sped up alongside him and discarded trash (in the form of what appeared to be a large plastic soft drink cup) onto the front hood/windshield of Plaintiff's car, in yet another form of "fighting words" (effectively suggesting that Plaintiff is a bigot, under the circumstances then at-hand) (referred to herein as the "Second Instance of Fighting Words").

## Claim #1
## First Amendment Violation(s)

21.    Plaintiff reasserts all of the factual allegations set forth in Paragraphs 1-20 above.

22.    The First Amendment to the US Constitution provides (in pertinent part) that "Congress shall make no law …abridging the freedom of speech, …or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances".

23.    The First Amendment is applicable to state/local governments by/through incorporation with the Due Process clause of the Fourteenth Amendment per *Gitlow v. New York*, 268 US 652 (1925), and by/through 42 USC 1983.

24.    42 USC 1983 provides in pertinent part that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at

law, suit in equity, or other proper proceeding for redress …".

25.     On May 8, 2025, at approximately 3:30 pm EST, a collection of people commonly referred to as "protestors" had assembled outside of the Kent County Courthouse at the corner of Ottawa Ave NW and Lyon Street NW, to protest a jury's near-unanimous decision in the Underlying Schurr Case, to acquit the defendant (i.e., GRPD officer Schurr) of murder, for his handling of the arrest of Patrick Lyoya (the "Protest").

26.     At the same time and place as said Protest, the Plaintiff appeared, for the underlying purpose of engaging the assembled protestors in conversation or debate, *i.e.*, to persuade them that their reasons for protesting were misguided and would ultimately undermine ongoing and future efforts to eliminate racial discrimination, and to encourage them to peacefully disassemble and disperse and find better situations to protest.

27.     Plaintiff's position with regard to the Protest was buoyed by his heightened understanding of race relations in the history, laws and courts of the United States, acquired by personal experience/observation over his sixty-two (62) years, his undergraduate educational emphases on American history, political science and US Constitutional law, his law school training and his experience as a licensed Michigan attorney since 1989 (and a part-time assistant prosecutor for the City of Rochester MI in the late 1990's).

28.     Plaintiff's position with regard to the Protest was also buoyed by his strong conviction that the Defendant Becker's decision to prosecute GRPD officer Christopher Schurr in the Underlying Schurr Case represented *an extremely poor exercise of prosecutorial discretion* – in light of the alleged victim's conduct while being arrested in that case – as confirmed by the 11-1 jury decision in that case.

29.     Plaintiff's position with regard to the Protest was also buoyed by his belief that the alleged victim in the Underlying Schurr Case actually is solely to blame for his unfortunate demise,

free of any race-based causes, given his conduct in attempting to appropriate the arresting officer's weapon(s) while being arrested.

30.    Plaintiff's position with regard to the Protest was also buoyed by his belief that the assembled masses at the Protest are guilty of the same shallow thinking as the worst bigots in US history, by attributing a cause-effect relationship based only on the color of the primary actors' skin, in blatant disregard of other causative factors (such as the alleged victim's appropriation of Officer Shurr's stun gun).

31.    Plaintiff's position with regard to the Protest was also buoyed by his belief that the Protest would ultimately undermine ongoing/future efforts to eliminate racism, due to a segment of our society's predisposition to equate such (future) efforts with this flawed Protest, thereby painting all of such protests with one broad brush, effectively saying, "they're all the same".

32.    Plaintiff's position with regard to the Protest was also buoyed by his belief that his enlightened understanding of the Protest/situation made him better able to accomplish the Protestor's "big picture" long-term ends (with regard to racism) than the Protestors themselves.

33.    The Plaintiff appeared at the Protest to engage the assembled protestors in conversation and to voice his objection to Defendant Becker's poor exercise of discretion in the Underlying Schurr Case, by merely/politely suggesting to the assembled protestors that they "ought to choose [their] battles more wisely".

34.    Instead of engaging with Plaintiff in meaningful conversation about the Underlying Schurr Case, Plaintiff immediately encountered verbal threats and taunts, such as that of one particular protester who kept loudly/repeatedly asking the same general question, *i.e*, "are you still f*cking your sister" (referred to herein as the "First Instance of Fighting Words").

35.    The question asked of Plaintiff at the Protest amounted to "fighting words" for purposes of the First Amendment to the US Constitution, which provides (in pertinent part) that

"Congress shall make no law …abridging the freedom of speech, …or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances".

36.     The Plaintiff appeared at the Protest to peaceably assemble, and speak freely, in part to petition the government (i.e, the Defendant City of Grand Rapids and Defendant Becker) for a redress of grievances in their handling of the Underlying Schurr Case.

37.     Plaintiff was immediately met with nothing but "fighting words" at the Protest, i.e, speech that can be reasonably expected to "incite an immediate, violent reaction from the person to whom it is directed". *Chaplinsky v. New Hampshire*, 315 U.S. 568 (1942).

38.     The "fighting words" exception to the First Amendment, originating in the Chaplinsky case just cited, holds that such words, which tend to inflict injury or cause an immediate breach of the peace, are ***not*** protected because they have slight social value and are not essential for expressing ideas.

39.     At the precise moment that Plaintiff's received fighting words for his suggestion to the assembled protestors, Plaintiff stood at the scene of the Protest at the corner of Ottawa Ave NW and Lyon Street NW cloaked with a constitutional right (of speech/assembly) at the scene that was ***superior*** to that of those expressing fighting words. *Chaplinsky v. New Hampshire*, 315 U.S. 568 (1942).

40.     When presented with a choice, the First Amendment (as illuminated by *Chaplisnky*) effectively compels the government (i.e., the Defendant City of Grand Rapids in this case, by and through its police officers/department, and by incorporation through the Fourteenth Amendment) to mute any fighting words so that free speech can flow unhindered; it is at the very of core of the reason for government's existence – its very *raison d'etre* (as indicated by Defendant Becker's own/published "mission statement" providing in pertinent part that the Prosecutor "will protect the rights … of Kent County residents through diligent efforts to prosecute criminal offenses [and]

support victims of crime …". https://www.kentcountymi.gov/1103/Prosecutors-Office

41.     Instead of muting the fighting words that Plaintiff received or removing those who expressed them from the scene, Defendant City of Grand Rapids (by and through its police officers at the scene) ordered *Plaintiff* to leave, despite Plaintiff's superior constitutional rights to maintain his presence there.

42.     Plaintiff was standing among the protestors at the Protest only after (i) rolling down the driver's window of his automobile while paused at a red light immediately adjacent to the Protest at Ottawa Ave NW and Lyon Street NW, to suggest to the Protestors that they "choose [their] battles more wisely"; (ii) receiving an immediate response consisting exclusively of the First Instance of Fighting Words; and (iii) temporarily exiting his vehicle, to confront the ogre who uttered the fighting words and lead him to a higher ground (of understanding).

43.     Plaintiff returned to his vehicle immediately after being instructed to do so by an unknown (to Plaintiff) police officer immediately after the First Instance of Fighting Words, and proceeded to turn left onto Lyon Street NW, so as to leave the scene.

44.     Before Plaintiff could even complete his left-hand turn onto Lyon Street NW, he received additional fighting words (for First Amendment purposes) in the form of trash thrown at him by Defendant/Trash-Thrower Saas from his vehicle (which had pulled up alongside to observe the situation) -- in the racially charged atmosphere of the Protest, Defendant/Trash-Thrower Saas was effectively calling plaintiff a "bigot" (referred to herein as the "Second Instance of Fighting Words").

45.     Plaintiff received yet more fighting words (for First Amendment purposes) when Defendant/Trash-Thrower Saas, who was able to simply/freely drive away from the scene, instead commandeered his vehicle in such a way to ram the Plaintiff's vehicle broadside, as Plaintiff stood next to his own vehicle, in such a way to pin/crush Plaintiff between the two vehicles – conduct

which again conveyed the allegation of Plaintiff's bigotry in the penultimate form of "fighting words" at the Protest, under then-present circumstances (referred to herein as the "Third Instance of Fighting Words").

46.    The Defendant City of Grand Rapids (by and through its police department and prosecutor) and Defendant Becker effectively took sides between/among those assembled at the Protest, in such a way to unconstitutionally favor fighting words and those who conveyed them, over constitutionally-protected speech and at least one person who had assembled to convey it (i.e, the Plaintiff).

47.    The Defendant City of Grand Rapids (by and through its police department) effectively took sides between/among those involved with the First Instance of Fighting Words – by instructing a person who engaged in constitutionally protected speech (i.e., the Plaintiff) to leave the scene instead of the person(s) rebutting same with classic "fighting words" for First Amendment purposes.

48.    The Defendant City of Grand Rapids (by and through its police department) effectively took sides between/among those involved with the Second Instance of Fighting Words – by failing to recognize Defendant/Trash-Thrower Saas's incentive to lie, being duped into believing him, and issuing/prosecuting GRPD Incident Report # 25-029112, all while allowing Defendant/Trash-Thrower Saas to go free without any charges, despite evidence indicating he initiated a confrontation with Plaintiff by throwing trash at him, filed a false police report, committed a felonious assault and battery upon Plaintiff, and tried to kill Plaintiff.

49.    The Defendant City of Grand Rapids (by and through its police department) and Defendant Becker) effectively took sides between/among those involved with the Third Instance of Fighting Words – by failing to recognize Trash-Thrower Saas' incentive to lie, being duped into believing him, and issuing/prosecuting GRPD Incident Report # 25-029112, all while allowing

10

Defendant/Trash-Thrower Saas to go free without any charges, despite evidence indicating he initiated a confrontation with Plaintiff by throwing trash at Plaintiff, filed a false police report, committed a felonious assault and battery upon Plaintiff, and tried to kill Plaintiff.

50.     Defendant City of Grand Rapids, by and through its police officers, and Defendants Heugel and Becker, impermissibly violated 42 USC 1983 and Plaintiff's First Amendment rights, applicable to state/local governments by/through incorporation with the Due Process clause of the Fourteenth Amendment per *Gitlow v. New York*, 268 US 652 (1925), in their handling of the First, Second and Third Instances of Fighting Words, and in their issuance and continued prosecution of GRPD Incident Report # 25-029112, with a chilling effect on the free speech rights of Plaintiff *and those similarly situated (past, present and future).*

51.     Any civil servant incapable of grasping the overriding First Amendment context of Plaintiff's activity at the Protest (without prompting much less after six months of litigation) should be suspended pending further training or fired, and if poor training is to blame then all those responsible should be fired; it should not take six (6) months of criminal proceedings and a civil complaint of this nature to impress this upon civil servants (*especially a prosecutor*).

52.     Defendants City of Grand Rapids and Becker's violation(s) of 42 USC 1983 and Plaintiff's First Amendment rights (through the Fourteenth Amendment via incorporation) has caused Plaintiff to suffer injury and damage including, without limitation, the following:

      a.     pain, suffering, and emotional distress;

      b.     humiliation, mortification, and embarrassment;

      c.     actual wage loss and lost earning capacity;

      d.     attorney fees; and

      e.     other injuries and damages and consequences that are found to be related to the First Instance of Defendant's assault and battery of Plaintiff that develop or manifest themselves during the course of discovery and trial.

53.     The Defendant City of Grand Rapids and Defendants Heugel and Becker's

violation(s) of 42 USC 1983 and Plaintiff's First Amendment rights was willful, malicious and wanton, in light of the prosecutor's conflict of interest and personal stake in the core of the matter – i.e., the Plaintiff's speech in question was strong criticism of the prosecutor's office itself (in its handling of the Underlying Schurr Case).

54.    In light of the fact that said violation(s) of Plaintiff's First Amendment rights was willful, malicious and wanton (i.e., with reckless indifference), punitive and/or exemplary damages of Ten Million ($10,000,000.00) Dollars payable by Defendant City of Grand Rapids and/or Defendant Becker to Plaintiff is hereby sought, or such other amount as the Court may deem appropriate; alternatively, Plaintiff would gladly accept payment of a lesser amount (not less than One Hundred Thousand ($100,000) Dollars plus costs) directly from Defendant Becker instead of taking one dollar of Plaintiff's fellow taxpayers' money (along with Defendant Becker's resignation as prosecutor).

*Wherefore, Plaintiff requests* that this honorable Court enter judgment against Defendant City of Grand Rapids and Defendants Heugel and Becker for violating Plaintiff's First Amendment rights as follows:

(a)    Ten Million ($10,000,000.00) Dollars in damages (or $100,000 payable by Defendant Becker alone along with his resignation as prosecutor);

(b)    An award to Plaintiff for all of his costs and expenses involved with bringing this action, including Plaintiff's reasonable attorney fees, disbursements and court costs, to the extent awardable under applicable law;

(c)    Any pre- or post-judgement interest to which Plaintiff may be entitled, pursuant to MCL 600.6013(8) or otherwise; and

(d)    Such further relief or damages to which Plaintiff may be entitled under applicable law.

**Claim #2**
**Eighth Amendment Violation -- Cruel & Unusual Punishment**

55.    Plaintiff reasserts all of the factual allegations set forth in Paragraphs 1-54 above.

56.    The Eighth Amendment to the U.S. Constitution (applicable to state/local governments by/through incorporation with the Due Process clause of the Fourteenth Amendment per *Robinson v. California,* 370 U.S. 660 (1962)) provides in pertinent part that "[e]xcessive bail shall not be required, …nor cruel and unusual punishments inflicted".

57.    42 USC 1983 provides in pertinent part that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress …".

58.    At approximately 4: 00 pm EST on May 8, 2025, Plaintiff was placed in handcuffs near the site of the Protest while being questioned by GRPD, though not yet having been charged with a crime.

59.    Plaintiff's handcuffs were not removed until about 6: 00 pm EST on May 8, 2025, after being charged with a crime and transported to the Kent County Jail for overnight detention pending arraignment.

60.    Plaintiff's handcuffs were unnecessarily restrictive and possibly defectively made and/or placed on Plaintiff, such that they caused undue pain and suffering to Plaintiff.

61.    Plaintiff continually expressed the discomfort being caused by his handcuffs to the arresting officer(s) but little or nothing was done to remedy the situation until Plaintiff was placed in the Kent County Jail (and the handcuffs were removed) at approximately 6:00 pm on May 8, 2025.

62.    The Plaintiff's pain and suffering from his handcuffs rise to the level of "cruel and

13

unusual punishment" for purposes of the Eighth Amendment, especially in light of: (i) the minimal risk to police from removal of the handcuffs; (ii) the lack of any history of violent behavior by Plaintiff; (iii) the pat-down bodily search of Plaintiff by GRPD at the outset of their questioning of him confirming the absence of any weapon upon him, (iv) the presence of other safeguards to police while Plaintiff sat locked in the screened-in back seat of the police car; (v) the failure of GRPD to take any meaningful action to fix or minimize Plaintiff's pain/suffering from his handcuffs; and (vi) the lack of any formal hearing or determination with regard to the underlying charge(s) against Plaintiff, at that point in the proceedings against him.

63.    The Defendants Heugel and City of Grand Rapids, by and through its police officers/department, knew or should have known that Plaintiff's pain and suffering due to his handcuffs were unjustifiable for any reasonable legal or practical purpose, yet took no action to minimize/avoid it even after being asked to do so.

64.    Plaintiff's undue pain and suffering from his handcuffs was willfully, maliciously and wantonly caused by Defendants Heugel and City of Grand Rapids, by and through the arresting officers, and has no place in a civilized society, per the Eighth Amendment.

65.    Defendants Heugel and City of Grand Rapids' handling of Plaintiff's handcuffs as outlined above constitutes breaches of 42 USC 1983 and Plaintiff's Eighth Amendment rights against cruel and unusual punishment.

66.    Defendants Heugel and City of Grand Rapids' violations of 42 USC 1983 and Plaintiff's Eighth Amendment rights has caused Plaintiff to suffer injury and damage including, without limitation, the following:

    a.    pain, suffering, and emotional distress;

    b.    humiliation, mortification, and embarrassment;

    c.    attorney fees; and

    d.    other injuries and damages and consequences that are found to be related to

the First Instance of Defendant's assault and battery of Plaintiff that develop or manifest themselves during the course of discovery and trial.

67.     In light of the fact that the violation of Plaintiff's Eighth Amendment rights prohibiting the infliction of cruel and unusual punishment was willful, malicious and wanton (i.e., with reckless indifference), punitive and/or exemplary damages of One Million ($1,000,000.00) Dollars payable by Defendants Heugel and/or City of Grand Rapids to Plaintiff is hereby sought, or such other amount as the Court may deem appropriate.

*Wherefore, Plaintiff requests* that this honorable Court enter judgment against Defendants Heugel and City of Grand Rapids for violating Plaintiff's Eighth Amendment rights as follows:

(a)     One Million ($1,000,000.00) Dollars in damages;

(b)     An award to Plaintiff for all of his costs and expenses involved with bringing this action, including Plaintiff's reasonable attorney fees, disbursements and court costs, to the extent awardable under applicable law;

(c)     Any pre- or post-judgement interest to which Plaintiff may be entitled, pursuant to MCL 600.6013(8) or otherwise;

(d)     punitive and/or exemplary damages of One Million ($1,000,000.00) Dollars; and

(e)     Such further relief or damages to which Plaintiff may be entitled under applicable law.

### Claim #3
### Eighth Amendment Violation – Excessive Bail

68.     Plaintiff reasserts all of the factual allegations set forth in Paragraphs 1-67 above.

69.     The Eighth Amendment to the U.S. Constitution (applicable to state/local governments by/through incorporation with the Due Process clause of the Fourteenth Amendment per *Robinson v. California*, 370 U.S. 660 (1962)) provides in pertinent part that "[e]xcessive bail shall not be required … ".

70.    42 USC 1983 provides in pertinent part that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress …".

71.    Plaintiff's arraignment with regard to GRPD Incident Report # 25-029112 was held in the 61st Disrict Court (of Kent County) at approximately 2:30 pm EST on May 9, 2025, before Magistrate J. Michael Christenson.

72.    During Plaintiff's arraignment, the Defendants City of Grand Rapids and or Kent County (by and through the presiding magistrate) and Defendant Christensen effectively libeled/slandered Plaintiff by: (i) alleging that he had concealed evidence to an extent that he had violated ethical rules of professional responsibility applicable to lawyers in Michigan; and (ii) ordering Plaintiff not to speak in his own defense.

73.    By prohibiting Plaintiff from speaking at his own arraignment, the presiding magistrate willfully, maliciously and wantonly denied Plaintiff of an "arraignment' as contemplated by Michigan's criminal code.

74.    The presiding magistrate set Plaintiff's bail at an amount ($5,000.00) that was excessive in light of (i) the lack of any meaningful opportunity for Plaintiff to speak at his own "arraignment"; (ii) the libel/slandering of Plaintiff by the presiding magistrate, suggesting an improper factor in the presiding magistrate's bail-setting decision; (iii) (on information and belief) an inconsistency between the magistrate's bail decision for Plaintiff and his bail decisions for other defendants (as prohibited by the US Constitution's Fourth Amendment guarantee of equal protection of the laws); (iv) the express consideration of factors (i.e., Plaintiff's supposed concealment of evidence and violation of applicable attorney ethics rules) outside the scope of

16

permissible considerations in the presiding magistrate's bail decision pursuant to MCR 6.106(F);

and (v) disregard of the Court Service's bond recommendation and arresting officer's suggestion

for release on personal recognizance.

75.    Plaintiff's allegations that he was publicly libeled/slandered by the presiding

magistrate at his "arraignment" are supported by the following factors:

a.    Statements made by the presiding magistrate at Plaintiff's "arraignment"
incorrectly alleged that Plaintiff had unethically hidden the nightstick he had used to dent
Defendant/Trash-Thrower Saas's automobile, after the initial confrontation between
Plaintiff and Defendant/Trash-Thrower Saas, but before being questioned by police.

b.    Plaintiff did indeed secure the subject nightstick in a safe place, after the
initial confrontation between Plaintiff and Trash-Thrower Saas, but before being
questioned by police, for the following reasons:

(i)    Plaintiff had left the scene of the Protest, after confronting and being
assaulted by Trash-Thrower Saas, because the Plaintiff thought that
Defendant/Trash-Thrower Saas had left the scene of the Protest
entirely, Plaintiff had observed an unruly throng of people rushing
toward him, and Plaintiff was only returning to the scene to file a
police report regarding the damage caused to Plaintiff's Nissan by
the broadside ramming of it by Trash-Thrower Saas;

(ii)    Plaintiff did not initially know what situation he would find at the
scene of the Protest, especially with regard to the levels of peace,
order and police control over the potentially unruly crowd;

(iii)    Plaintiff did not want to return to the scene of the Protest with the
subject nightstick because it had broken into two pieces, one of
which actually became a more lethal weapon, with a very sharp
point, and did not want to be accused of concealing/carrying such a
lethal weapon, nor did he want to risk having it seized by an unruly
protestor and used against Plaintiff.

c.    Plaintiff's handling of the subject nightstick was not unethical given: (i) the
limited duration of any perceived "concealment" – i.e., about 10 minutes; (ii) Plaintiff's
agreement to take police to it immediately upon being asked, without reservation (apart
from handcuff removal to avoid embarrassment if/when seen by any of Plaintiff's co-
workers); and (iii) Plaintiff's valid concerns about being viewed as carrying a
concealed/lethal weapon under then-present circumstances.

d.    Defendant Christenson's statements about Plaintiff's alleged concealment
of evidence were not privileged pursuant to *Oesterle v Wallace*, 272 Mich. App. 260;
725 NW2d 470 (2006), which held in pertinent part that "[s]tatements made by judges, …
during the course of judicial proceedings are absolutely privileged if they are relevant,
material, or pertinent to the issue being tried.

f.    Defendant Christensen's statements about Plaintiff's alleged concealment of evidence during Plaintiff's arraignment on May 9, 2025, even if true, were not relevant, material, or pertinent to the issue at hand because they were outside the scope of permissible considerations in a magistrate's bail decision pursuant to MCR 6.106(F).

76.    Defendants City of Grand Rapids and/or Kent County (by and through the presiding magistrate) and Defendant Christensen's handling of the Plaintiff's arraignment as outlined above violated Plaintiff's Eighth Amendment rights against excessive bail and 42 USC 1983.

77.    Defendants City of Grand Rapids and/or Kent County (by and through the presiding magistrate) and Defendant Christensen's violation of Plaintiff's Eighth Amendment rights and 42 USC has caused Plaintiff to suffer injury and damage including, without limitation, the following:

a.    pain, suffering, and emotional distress;

b.    humiliation, mortification, and embarrassment;

c.    excessive bail;

d.    attorney fees; and

e.    other injuries and damages and consequences that are found to be related to the Defendant's violation of Plaintiff's Eighth Amendment rights prohibiting excessive bail that develop or manifest themselves during the course of discovery and trial.

78.    In light of the fact that the violations of Plaintiff's Eighth Amendment rights against excessive bail and 42 USC was willful, malicious and wanton, wanton (i.e., with reckless indifference), punitive and/or exemplary damages of One Million ($1,000,000.00) Dollars payable by Defendants City of Grand Rapids and/or Kent County and Defendant Christensen to Plaintiff is hereby sought, or such other amount as the Court may deem appropriate.

*Wherefore, Plaintiff requests* that this honorable Court enter judgment against Defendants City of Grand Rapids and/or Kent County and Defendant Christensen for violating Plaintiff's Eighth Amendment rights regarding excessive bail as follows:

(a)    One Million ($1,000,000.00) Dollars in damages;

(b)    An award to Plaintiff for all of his costs and expenses involved with bringing this

action, including Plaintiff's reasonable attorney fees, disbursements and court

costs, to the extent awardable under applicable law;

(c)     Any pre- or post-judgement interest to which Plaintiff may be entitled, pursuant to

MCL 600.6013(8) or otherwise;

(d)     punitive and/or exemplary damages of One Million ($1,000,000.00) Dollars; and

(e)     Such further relief or damages to which Plaintiff may be entitled under applicable

law.

### Claim #4
### False Arrest/Imprisonment

79.     Plaintiff reasserts all of the factual allegations set forth in Paragraphs 1-78 above.

80.     Supplemental or ancillary jurisdiction of this claim is conferred on this Court by 28

USC 1367.

81.     On May 8, 2025, at approximately 3:30 pm EST, Plaintiff had just begun driving

his automobile (i.e., a silver 2015 Nissan Altima) ("Plaintiff's Nissan") from his place of

employment (at 200 Ottawa Ave NW #500, Grand Rapids MI 49053), toward his residence (at

270 Langlois Drive SE, Grand Rapids, MI 49546) along his usual route, and was idling in the left-

hand turn lane on east-bound Lyon Street NW waiting for an opportunity to turn left on northbound

Ionia Avenue toward the I-196 freeway).

82.     While Plaintiff was idling in his automobile, another driver (i.e., Defendant/Trash-

Thrower Saas), navigated his vehicle (i.e., a blue 2025 Honda CRV, VIN#s

7FARS6H53SE058360, MI plate #EWQ7685) (Saas's "Honda CRV") such that he pulled

alongside Plaintiff's Nissan and slowed down, then rolled down his window and discarded trash

onto the Plaintiff's windshield.

83.     Defendant/Trash-Thrower Saas did in fact, willfully and intentionally, cause

unwanted contact with Plaintiff's automobile by throwing trash at Plaintiff's automobile for no

good reason (referred to herein as the "First Instance" of an assault and battery by

19

Defendant/Trash-Thrower Saas upon the Plaintiff).

84.    The First Instance of an assault and battery by Defendant/Trash-Thrower Saas came in the context of Plaintiff exercising his First Amendment free speech rights at the subject Protest, with the apparent intention of making some sort of statement about the Plaintiff, and constituted "fighting words" by Trash-Thrower Saas, in the context of Plaintiff's exercising his First Amendment rights at the subject Protest.

85.    The First Instance of an assault and battery by Defendant/Trash-Thrower Saas occurred contemporaneously with Plaintiff exercising his First Amendment free speech rights, by arguing with protestors assembled at the corner of Ottawa Ave NW and Lyon Street NW in downtown Grand Rapids, and against the City of Grand Rapids Prosecutor for his poor exercise of prosecutorial discretion in the Underlying Schurr Case.

86.    Shortly after the First Instance of an assault and battery by Trash-Thrower Saas, Trash-Thrower Saas, while driving his Honda CRV, made an additional intentional and unlawful threat to do bodily injury to Plaintiff by angling his Honda CRV directly toward the Plaintiff and Plaintiff's Nissan, and accelerating quickly, placing Plaintiff in fear of being crushed between the two automobiles (referred to herein as the "Second Instance" of an assault and battery by Defendant/Trash-Thrower Saas against the Plaintiff).

87.    After ramming the Plaintiff's Nissan with his own Honda CRV, Defendant/Trash-Thrower Saas left the scene of the collision for reasons unknown to the Plaintiff at the time of his departure.

88.    Statements made by Defendant/Trash-Thrower Saas, and by the passenger in his automobile (i.e.. Defendant Woods) to the GRPD were false in certain key respects but were included in GRPD Incident Report # 25-029112 nevertheless, to wit:

a.    that Plaintiff tried to stab Defendant/Trash-Thrower Saas and/or Defendant Woods and "just missed" them;

b.      that the incident giving rise to the confrontation between Plaintiff and Defendant/Trash-Thrower Saas was a random act by Plaintiff not caused by Trash-Thrower Saas's throwing of trash at Plaintiff; and

c.      that Plaintiff somehow caused the front-end damage to Defendant/Trash-Thrower Saas's Honda CRV even though the arresting officer effectively admitted that he did not understand how that might have happened, while questioning Plaintiff.

89.     In addition to false statements by Defendant/Trash-Thrower Saas and/or Defendant Woods, GRPD Incident Report # 25-029112 was in accurate and/or unreliable in other key respects, to wit:

a.      conclusory statements to the effect that Plaintiff seemed uncertain whether it was Defendant/Trash-Thrower Saas who threw anything at his automobile are unreasonable in light of Plaintiff's actual statements as reflected in the arresting officer's body-cam footage;

b.      the arresting officer's failure to separate Defendant/Trash-Thrower Saas and/or Defendant Woods before hearing their respective reports about the underlying incident, as a means of testing their veracity; and

c.      the arresting officer's failure to search the incident area for trash of the type described by Plaintiff as having been tossed at his automobile, to wit, a large plastic soft drink cup, which was probably still lying at the scene, and which would have corroborated Plaintiff's statements.

90.     Defendant City of Grand Rapids, by and through its police officers/department and Defendant Heugel, physically restrained Plaintiff and deprived him of his personal liberty and freedom of movement for a period of about twenty-four (24) hours, with the intention of confining him (pending arraignment).

91.     The arrest and confinement of the Plaintiff were against his will.

92.     Defendant City of Grand Rapids, by and through its police officers/department and Defendant Heugel, accomplished the arrest, restraint  and imprisonment of Plaintiff by actual physical force, and the corresponding deprivation of Plaintiff's liberty and freedom was intentional, unlawful, unprivileged, and without probable cause.

93.     In addition to the initial restraint and deprivation of Plaintiff's personal liberty and freedom of movement being unreasonable, the continued detention of Plaintiff pending

arraignment was unreasonable.

94.     Plaintiff was conscious of his confinement at all relevant times

95.     As a direct and proximate result of Defendants City of Grand Rapids and Heugel's

false arrest and false imprisonment of Plaintiff, Plaintiff has suffered injury and damage including,

without limitation, the following:

      a.     pain, suffering, and emotional distress;
      b.     humiliation, mortification, and embarrassment;
      c.     actual wage loss and lost earning capacity;
      d.     attorney fees; and
      e.     other injuries and damages and consequences that are found to be related to the Defendants City of Grand Rapids and Heugel's false imprisonment of Plaintiff that develop or manifest themselves during the course of discovery and trial.

*Wherefore. Plaintiff requests* that this honorable Court enter judgment against Defendants

City of Grand Rapids and Heugel for False Arrest/Imprisonment as follows:

(a)     One Million ($1,000,000.00) Dollars in damages;

(b)     An award to Plaintiff for all of his costs and expenses involved with bringing this action, including Plaintiff's reasonable attorney fees, disbursements and court costs, to the extent awardable under applicable law;

(c)     Any pre- or post-judgement interest to which Plaintiff may be entitled, pursuant to MCL 600.6013(8) or otherwise; and

(d)     Such further relief or damages to which Plaintiff may be entitled under applicable law.

### Claim #5
### Malicious Prosecution

96.     Plaintiff reasserts all of the factual allegations set forth in Paragraphs 1-95 above.

97.     Supplemental or ancillary jurisdiction of this claim is conferred on this Court by 28

USC 1367.

98.    Defendants City of Grand Rapids and/or Kent County (by and through their Prosecutor, Defendant Becker) proceeded with prosecution of Plaintiff upon filing of GRPD Incident Report # 25-029112 by the arresting officer.

99.    GRPD Incident Report # 25-029112 was erroneous and/or unreliable in certain key respects, to wit:

  a. allegations by Defendant/Trash-Thrower Saas and Defendant Woods that Plaintiff tried to stab them were false;

  b. the description of Plaintiff as being uncertain whether Defendant/Trash-Thrower Saas threw anything at his automobile at Plaintiff is erroneous;

  c. the conclusion that the incident giving rise to the confrontation between Plaintiff and Defendant/Trash-Thrower Saas was a random act by Plaintiff was erroneous;

  d. the arresting officer's failure to separate to Defendant/Trash-Thrower Saas and Defendant Woods before hearing their respective reports about the underlying incident, as a means of testing their veracity;

  e. the arresting officer's failure to include sufficient details to properly frame the underlying incident(s) in a First Amendment context or describe Defendant/Trash-Thrower Saas's trash-throwing as "fighting words" for First Amendment purposes; and

  f. the arresting officer's failure to search the incident area for trash of the type described by Plaintiff as having been tossed at his automobile, to wit, a large plastic soft drink cup, which was probably still lying at the scene, which would have corroborated Plaintiff's allegations.

100.    Defendants City of Grand Rapids and/or Kent County, through their prosecutor, and Defendant Becker, knew or should have known that GRPD Incident Report # 25-029112 was erroneous and/or unreliable in certain key respects, when deciding whether to prosecute Plaintiff, for the following reasons:

  a. security camera footage from the Kent County Courthouse and neighboring parcels was available to Defendants City of Grand Rapids and/or Kent County, through their prosecutor, and Defendant Becker, and failed to corroborate much of Defendants Trash-Thrower Saas and Woods' statements;

  b. security camera footage from the Kent County Courthouse and neighboring parcels was available to Defendants City of Grand Rapids and/or Kent County, through their prosecutor, and Defendant Becker, and supported Plaintiff's version of key events;

  c. Trash-Thrower Saas's estimate of damage to his vehicle failed to separate repair costs for dents caused by Plaintiff's nightstick from repair costs for front-end damage attributable to Trash-Thrower Saas's intentional act(s), as required for purpose of the crime

23

for which Plaintiff was prosecuted – i.e., MCL 750.377a(1)(b) (Malicious Destruction of Property & Damages of $1,000 - $20,000);

    d.    the arresting officer's failure to separate the Defendant/Trash-Thrower Saas and Defendant Woods before hearing their respective reports is apparent from the arresting officer's body-cam footage, which should have been reviewed by the prosecutor before proceeding; and

    e.    available security camera footage demonstrates that the entire confrontation between Plaintiff and Defendant/Trash-Thrower Saas was inextricably linked to the protest (and Plaintiff's counter-protest) at the corner of Ottawa Ave NW and Lyon Street NW in downtown Grand Rapids, a protest in which Defendant/Trash-Thrower Saas and Defendant Woods' beliefs/support were contrary to their understanding of the Plaintiff's position, thereby incentivizing them to lie.

101.    On information and belief, Defendant City of Grand Rapids and/or Kent County, through their prosecutor, and Defendant Becker proceeded with prosecution of the Plaintiff for personal/malicious reasons including, without limitation:

    a.    vexation;

    b.    to cause damage to Plaintiff's professional/business reputation;

    c.    to cause damage to Plaintiff's personal/community reputation;

    d.    in retaliation for the Prosecutor's perception of Plaintiff as a bigot – due to the shallow/cosmetic perception of Plaintiff's affiliation with and support of a white/Caucasian perpetrator in the Underlying Schurr Case;

    e.    in retaliation for Plaintiff's protest of the Prosecutor's handling of Underlying Schurr Case, and specifically, Plaintiff's opinion that the Prosecutor's decision to prosecute in that case was an extremely poor exercise of prosecutorial discretion in light of the alleged victim's conduct in that case (i.e. taking the arresting officer's stun gun while being arrested).

102.    When confronted with video evidence of Defendant/Trash-Thrower Saas's trash-throwing which prompted the entire altercation between Plaintiff and Defendant/Trash-Thrower Saas, Defendants City of Grand Rapids and/or Kent County, by and through their prosecutor, Defendant Becker, threatened (at a status conference) to change the charge against Defendant to carrying a concealed weapon in violation of MCL 750.227(1).

103.    MCL 750.227(1) provides in pertinent part that "[a] person shall not carry a dagger, dirk, stiletto, a double-edged nonfolding stabbing instrument of any length, or any other dangerous weapon, except a hunting knife adapted and carried as such, concealed on or about his or her

24

person, or whether concealed or otherwise in any vehicle operated or occupied by the person ..."

104.    The Second Amendment to the U.S. Constitution (applicable to state/local governments by/through incorporation with the Due Process clause of the Fourteenth Amendment per *McDonald v. City of Chicago*, 561 U.S. 742 (2010)) provides in pertinent part that "the right of the people to keep and bear Arms shall not be infringed".

105.    Defendant Becker knew or should have known that applicable rules of statutory construction (and especially the principle of *ejusdem generis* as applied in *People v. Smith*, 393 Mich 432 (1975)) and the Second Amendment prevent the application of MCL 750.227(1) to sticks such as police batons of the type that Plaintiff had temporarily stowed in his automobile and that its construction must be limited to the maximum extent possible due to overriding Second Amendment rights being impacted.

106.    If MCL 750.227(1) is to be applied to Plaintiff's baton, then it could also be logically applied to:

      (a)    the carrying of a pen in a person's breast pocket, because the typical sharp-pointed pen is more of an inherently dangerous stabbing instrument of the type referenced in MCL 750.227(1) than any stick,

      (b)    the typical belt around a person's waist, because the strap is more lethal (as a choking instrument) than any of the weapons referenced in MCL 750.227(1); or

      (c)    the typical tools/jack commonly stowed in vehicles, because they are sturdier/stronger and not prone to snapping like a wooden stick.

107.    Defendant Becker knew or should have known that the Plaintiff did not violate MCL 750.227(1) but threatened to apply it anyways for improper/ulterior motives, to wit: (i) to conceal the Plaintiff's criticism of Defendant Becker's poor exercise of prosecutorial discretion in the Underlying Schurr Case; (ii) a "win at all costs" mentality leading Defendant Becker to believe that it is better to pressure an innocent man to accept a lesser charge than to simply let him go free; and (iii) to conceal all of the Defendants herein collective suppression/violation(s) of Plaintiff's rights as set forth herein (by terminating proceedings with a coerced settlement without any further

illumination of Defendants' collective wrongdoing).

108.    MCL 600.2907 provides for civil and criminal liability for every person who, for vexation or trouble or with malice, causes another to be arrested, attached, or in any way proceeded against by any process of civil or criminal action without that person's consent.

109.    The Defendants City of Grand Rapids and/or Kent County, through their prosecutor, and Defendant Becker's criminal proceedings against Plaintiff are still pending, and represent a poor exercise of prosecutorial discretion in light of civil remedies available between/among the Defendant/Trash-Thrower Saas, Defendant Woods and the Plaintiff, and Defendants Becker, City of Grand Rapids and/or Kent County's malicious/ulterior motivations for proceeding.

110.    As a direct and proximate result of Defendants Becker, City of Grand Rapids and/or Kent County's malicious prosecution of Plaintiff, Plaintiff has suffered injury and damage including, without limitation, the following:

    a.    pain, suffering, and emotional distress;

    b.    humiliation, mortification, and embarrassment;

    c.    actual wage loss and lost earning capacity;

    d.    attorney fees; and

    e.    other injuries and damages and consequences that are found to be related to said Defendants Becker, City of Grand Rapids and/or Kent County's malicious prosecution of Plaintiff that develop or manifest themselves during the course of discovery and trial.

*Wherefore, Plaintiff requests* that this honorable Court enter judgment against Defendants Defendants Becker, City of Grand Rapids and/or Kent County for malicious prosecution of Plaintiff as follows:

    (a)    One Million ($1,000,000.00) Dollars in damages;

    (b)    An award to Plaintiff for all of his costs and expenses involved with bringing this action, including Plaintiff's reasonable attorney fees, disbursements and court

costs, to the extent awardable under applicable law;

(c)     Any pre- or post-judgement interest to which Plaintiff may be entitled, pursuant to

MCL 600.6013(8) or otherwise; and

(d)     Such further relief or damages to which Plaintiff may be entitled under applicable

law.

## Claim #6
## Civil Conspiracy

111.    Plaintiff reasserts all of the factual allegations set forth in Paragraphs 1-110 above.

112.    Supplemental or ancillary jurisdiction of this claim is conferred on this Court by 28

USC 1367.

113.    Defendants City of Grand Rapids and/or Kent County (by and through their police

officers/department and prosecutors), Heugel and Becker illegally, maliciously, and wrongfully

conspired with one another and with Defendants Trash-Thrower Saas and Woods, in concerted

action, with the intent to and for the illegal purposes of filing and prosecuting a false police report

prohibited by MCL 750.411a and to deny or unduly hinder Plaintiff's exercise of his First

Amendment rights per U.S. Const. Amend I.

114.    Defendants City of Grand Rapids, Kent County, Heugel and Becker, alone and in

combination with Defendants Trash-Thrower Saas and Woods, conspired to produce and prosecute

a false police report prohibited by MCL 750.411a and to thereby hinder Plaintiff's free exercise of

his First Amendment rights, by accepting knowingly false statements made to the Grand Rapids

Police Department reflected in GRPD Incident Report # 25-029112, and prosecuting Plaintiff as

if those statements were true.

115.    This conspiracy did indeed result in the issuance of an erroneous GRPD Incident

Report # 25-029112 in violation of MCL 750.411a that was used as a basis for the illegal, unlawful,

or tortious detention and prosecution of Plaintiff.

116.    As a result of the conspiracy and the Defendants' illegal, wrongful, or tortious acts, Plaintiff sustained the following damages:

      a.     lost wages/compensation;
      b.     loss of standing/respect within the legal community;
      c.     emotional distress
      d.     sleeplessness and anxiety
      e.     attorney fees; and
      f.     other damages that may arise during the course of discovery and the course of trial.

*Wherefore, Plaintiff requests* that this honorable Court enter judgment against Defendants City of Grand Rapids, Kent County, Heugel, Becker, Trash-Thrower Saas and Woods for civil conspiracy as follows:

(a)    One Million ($1,000,000.00) Dollars in damages;

(b)    An award to Plaintiff for all of his costs and expenses involved with bringing this action, including Plaintiff's reasonable attorney fees, disbursements and court costs, to the extent awardable under applicable law;

(c)    Any pre- or post-judgement interest to which Plaintiff may be entitled, pursuant to MCL 600.6013(8) or otherwise; and

(d)    Such further relief or damages to which Plaintiff may be entitled under applicable law.

### Claim #7
### Intentional Infliction of Emotional Distress

117.    Plaintiff reasserts all of the factual allegations set forth in Paragraphs 1-116 above.

118.    Supplemental or ancillary jurisdiction of this claim is conferred on this Court by 28 USC 1367.

119.    The Defendant Kent County, by and through its 17th Circuit Court clerk has sent certain forms, an example of which is attached as Exhibit A, titled, "Notice to Appear" (at various points in its criminal proceedings against the Plaintiff), to Plaintiff's wife, Heidi B. Klees,

indicating in pertinent part that "You are ordered to appear [at court on certain days/times indicated]" regarding 17th (Kent County) Circuit Court case #25-05624-FH.

120.    The Plaintiff called the Defendant Kent County's circuit court clerk on August 1, 2025 to inquire about the Notices to Appear sent to Plaintiff's wife, and was told that they were sent in error, but notices have continued to be sent to Plaintiff's wife unabated.

121.    The Plaintiff's wife, Heidi B. Klees, is not a defendant in or party to the criminal case against Plaintiff (i.e., 17th District Court case #25-05624-FH) and has no past or present/pending criminal charges against her.

122.    The Defendant's "order" for Plaintiff's wife, Heidi B. Klees, to appear is groundless and void of legal authority.

123.    A lay person in receipt of a notice to appear such as the one attached as Exhibit A, in the context of Plaintiff's pending criminal matter, could reasonably lead him/her to believe that he/she is or may be charged with a crime and/or "guilty by association".

124.    A lay person in receipt of a notice to appear such as the one attached as Exhibit A, in the context of Plaintiff's pending criminal matter, could reasonably be expected to experience stress and anxiety that impacts all of their relationships to some extent, including any marital relationship, without limitation.

125.    Defendant Kent County knew or should have known of the possibility, if not likelihood, of the stress and anxiety a recipient of a notice to appear such as the one attached as Exhibit A could cause to the recipient.

126.    On information and belief, Defendant Kent County sent the notice(s) to appear such as the one attached as Exhibit A to Plaintiff's wife, intending to cause stress and anxiety to the Plaintiff's wife, her marital relationship with Plaintiff, and to Plaintiff, or with careless/negligent disregard of such ramifications.

127.    Defendant Kent County's actions with regard the notice(s) to appear such as the one attached as Exhibit A were: (i) extreme and outrageous (especially after Plaintiff's phone call to the court clerk on August 1, 2025); (ii) intentional and/or reckless; and (iii) the cause of unnecessary and excessive emotional distress to/among Plaintiff, Plaintiff's wife and their marital relationship.

128.    The emotional distress experienced by Plaintiff with regard to Defendant Kent County's sending of notice(s) such as the one attached as Exhibit A to Plaintiff's wife has been severe.

129.    As a direct and proximate result of Defendant Kent County's conduct with regard the notice(s) to appear such as the one attached as Exhibit A, Plaintiff has suffered damage(s) in the primary form of emotional distress, but also collaterally –

      a.    emotional distress
      b.    sleeplessness and anxiety
      c.    attorney fees; and
      d.    other damages that may arise during the course of discovery and the course of trial.

130.    In the context of criminal proceedings against the Plaintiff in 17th (Kent County) Circuit Court case #25-05624-FH, the Defendant Kent County's issuance of the above-referenced Notices to Appear to Plaintiff's wife, Heidi B. Klees, are "frivolous actions" for purposes of MCR 2.625(A)(2) and MCL 600.2591, and as such, any/all of Plaintiff's "reasonable costs … including court costs and reasonable attorney fees" in connection therewith are hereby requested and properly assessed against Defendant Kent County per MCL 600.2591(2).

*Wherefore, Plaintiff requests* that this honorable Court enter judgment against Defendant Kent County for Intentional Infliction of Emotional Distress as follows:

    (a)    One Million ($1,000,000.00) Dollars in damages;

    (b)    An award to Plaintiff for all of his costs and expenses involved with bringing this

action, including Plaintiff's reasonable attorney fees, disbursements and court costs, to the extent awardable under applicable law;

(c)    Any pre- or post-judgement interest to which Plaintiff may be entitled, pursuant to MCL 600.6013(8) or otherwise; and

(d)    Such further relief or damages to which Plaintiff may be entitled under applicable law.

### Claim #8
### Assault & Battery – First Instance

131.    Plaintiff reasserts all of the factual allegations set forth in Paragraphs 1-130 above.

132.    Supplemental or ancillary jurisdiction of this claim is conferred on this Court by 28 USC 1367.

133.    On May 8, 2025, at approximately 3:30 pm EST, Plaintiff was leaving his place of employment (at 200 Ottawa Ave NW #500, Grand Rapids MI 49053), in the process of driving Plaintiff's Nissan to his residence, and was idling in the left-hand turn lane on east-bound Lyon Street NW waiting for an opportunity to turn left on northbound Ionia Avenue toward the I-196 freeway).

134.    While Plaintiff was turning left at said intersection, Defendant/Trash-Thrower Saas navigated his vehicle such that he pulled alongside Plaintiff's Nissan, then rolled down his window and discarded trash (in the form of what appeared to be an oversized/plastic soft drink cup) onto the Plaintiff's windshield.

135.    Defendant/Trash-Thrower Saas did in fact, willfully and intentionally, cause unwanted contact with Plaintiff's Nissan by and through the trash thrown by Defendant/Trash-Thrower Saas (referred to herein as the "First Instance" of an assault and battery by Defendant/Trash-Thrower Saas upon the Plaintiff).

136.    Defendant/Trash-Thrower Saas's tossing of trash at Plaintiff's Nissan came in the

context of Plaintiff exercising his First Amendment free speech rights, with the intention of making some sort of statement about the Plaintiff, and constituted "fighting words" for purposes of Plaintiff's First Amendment rights.

137.    As a direct and proximate result of the First Instance of Defendant/Trash-Thrower Saas's assault and battery of Plaintiff, a course of events followed which led to Plaintiff's wrongful arrest, detention and prosecution, all of which would not have happened *but for* the First Instance of Defendant/Trash-Thrower Saas's assault and battery of Plaintiff.

138.    As a direct and proximate result of the First Instance of Defendant/Trash-Thrower Saas's assault and battery of Plaintiff, Plaintiff has suffered injury and damage, past, present, and future, including the following:

      a.    pain, suffering, and emotional distress;

      b.    humiliation, mortification, and embarrassment;

      c.    actual wage loss and lost earning capacity;

      d.    attorney fees; and

      e.    other injuries and damages and consequences that are found to be related to the First Instance of Defendant/Trash-Thrower Saas's assault and battery of Plaintiff that develop or manifest themselves during the course of discovery and trial.

*Wherefore, Plaintiff requests* that this honorable Court enter judgment against Defendant/Trash-Thrower Saas for the First Instance of Defendant/Trash-Thrower Saas's assault and battery of Plaintiff as follows:

(a)    One and 00/100 ($1.00) Dollar in damages;

(b)    An award to Plaintiff for all of his costs and expenses involved with bringing this action, including Plaintiff's reasonable attorney fees, disbursements and court costs, to the extent awardable under applicable law;

(c)    Any pre- or post-judgement interest to which Plaintiff may be entitled, pursuant to MCL 600.6013(8) or otherwise; and

(d)     Such further relief or damages to which Plaintiff may be entitled under applicable

law.

**Claim #9**
**Assault & Battery – Second Instance**

139.    Plaintiff reasserts all of the factual allegations set forth in Paragraphs 1-138 above.

140.    Supplemental or ancillary jurisdiction of this claim is conferred on this Court by 28

USC 1367.

141.    On May 8, 2025, at approximately 3:45 pm EST, Plaintiff was lawfully standing

outside of Plaintiff's Nissan next to the driver-side door, while it was legally parked in a parking

space on the east side of Lyon Street NW between Ionia Avenue and Division Avenue.

142.    At that time and place, Defendant/Trash-Thrower Saas, while driving his

automobile (i.e., a blue 2025 Honda CRV, VIN#s 7FARS6H53SE058360, MI plate #EWQ7685)

(Saas's "Honda CRV") made an intentional and unlawful threat to do bodily injury to Plaintiff by

accelerating and steering Defendant/Trash-Thrower Saas's Honda CRV directly toward the

Plaintiff in an attempt to crush Plaintiff between the two automobiles.

143.    The threat to Plaintiff was made under circumstances that created in Plaintiff a well-

founded fear of imminent peril – a threat which he was only able to evade by jumping out of the

way as Defendant/Trash-Thrower Saas's vehicle crashed into Plaintiff's vehicle.

144.    Defendant/Trash-Thrower Saas had the apparent ability to carry out the act of

crushing Plaintiff between the two vehicles and did in fact crash into the driver-side of Plaintiff's

vehicle.

145.    Defendant/Trash-Thrower Saas lied in subsequent statements to the police in which

he attributed the collision with Plaintiff's Nissan to a negligent "oversteering" by

Defendant/Trash-Thrower Saas – security camera footage will show that Defendant/Trash-

Thrower Saas was sitting behind the steering wheel of his idling vehicle in an open lane of traffic

on westbound Lyon Street. positioned in such a way that he was already alongside or past (but parallel to) the Plaintiff's east-facing/parked vehicle on Lyon Stret (and could have easily just driven straight/away without any steering adjustments), when Defendant/Trash-Thrower Saas changed gears (to reverse), backed up while steering his Honda CRV so that it was angled toward the Plaintiff and Plaintiff's Nissan, then accelerated toward Plaintiff while standing immediately adjacent to the driver-side door of Plaintiff's Nissan (referred to herein as the "Second Instance" of an assault and battery by Defendant/Trash-Thrower Saas upon the Plaintiff).

146.    As a direct and proximate result of the Second Instance of Defendant/Trash-Thrower Saas's assault and battery of Plaintiff, Plaintiff has suffered injury and damage, past, present, and future, including the following:

    a.    pain, suffering, and emotional distress;

    b.    humiliation, mortification, and embarrassment;

    c.    actual wage loss and lost earning capacity;

    d.    attorney fees; and

    e.    other injuries and damages and consequences that are found to be related to the Second Instance of Defendant/Trash-Thrower Saas's assault and battery of Plaintiff that develop or manifest themselves during the course of discovery and trial.

*Wherefore. Plaintiff requests* that this honorable Court enter judgment against Defendant/Trash-Thrower Saas for the Second First Instance of Defendant/Trash-Thrower Saas's assault and battery of Plaintiff as follows:

(a)    One Hundred Thousand ($100,000.00) Dollar in damages;

(b)    An award to Plaintiff for all of his costs and expenses involved with bringing this action, including Plaintiff's reasonable attorney fees, disbursements and court costs, to the extent awardable under applicable law;

(c)    Any pre- or post-judgement interest to which Plaintiff may be entitled, pursuant to MCL 600.6013(8) or otherwise; and

34

(d)     Such further relief or damages to which Plaintiff may be entitled under applicable

law.

**Claim #10**
**Defamation – First Instance**

147.    Plaintiff reasserts all of the factual allegations set forth in Paragraphs 1-146 above.

148.    Supplemental or ancillary jurisdiction of this claim is conferred on this Court by 28

USC 1367.

149.    On May 8, 2025, at approximately 4:15 pm EST, Defendant/Trash-Thrower Saas

and Defendant Woods made statements to the Grand Rapids Police near the site of the First and

Second Instances of Defendant/Trash-Thrower Saas's assault and battery upon the Plaintiff.

150.    Statements made by Defendant/Trash-Thrower Saas and Defendant Woods to

Grand Rapids Police near the site of the First and Second Instances of Defendant/Trash-Thrower

Saas assaults and batteries upon the Plaintiff, were knowingly false in certain key respects as

follows:

        a.      they denied throwing trash on Plaintiff's Nissan and thereby (effectively)
denied causing the confrontation with Plaintiff and portraying themselves as having
randomly selected by Plaintiff for that confrontation for no reason;

        b.      they alleged that Plaintiff (somehow) tried to stab (and "just missed") them
while they sat inside their own running vehicle and Plaintiff stood outside of it across a
lane of traffic; and

        c.      they denied intentionally driving toward Plaintiff and ramming Plaintiff's
Nissan.

151.    Defendant/Trash-Thrower Saas and Defendant Woods effectively published their

remarks to the Grand Rapids Police with knowledge of the falsity of the statements or in reckless

disregard of their truth or falsity.

152.    The publication of Defendant/Trash-Thrower Saas and Defendant Woods' remarks

to the Grand Rapids Police was not privileged.

153.    Defendant/Trash-Thrower Saas and Defendant Woods' published remarks to the

35

Grand Rapids Police were uttered by them with an intent for them to be used by the GRPD to form the basis for detention and prosecution of the Plaintiff.

154.    Defendant/Trash-Thrower Saas and Defendant Woods' published remarks to the Grand Rapids Police were in fact used  by the GRPD to form the basis for detention and prosecution of the Plaintiff.

155.    Defendant/Trash-Thrower Saas and Defendant Woods' accusations were defamation *per se*.

156.    The publication of these remarks has resulted in damage to Plaintiffs' reputation in the community and economic loss including, without limitation, the following:

    a.    lost wages/compensation;
    b.    loss of standing/respect within the legal community;
    c.    emotional distress
    d.     sleeplessness and anxiety
    e.    attorney fees; and
    f.    other damages that may arise during the course of discovery and the course of trial.

*Wherefore, Plaintiff requests* that this honorable Court enter judgment against Defendant/Trash-Thrower Saas and Defendant Woods for the First Instance of Defamation of Plaintiff as follows:

(a)    One Hundred Thousand ($100,000.00) Dollar in damages;

(b)    An award to Plaintiff for all of his costs and expenses involved with bringing this action, including Plaintiff's reasonable attorney fees, disbursements and court costs, to the extent awardable under applicable law;

(c)    Any pre- or post-judgement interest to which Plaintiff may be entitled, pursuant to MCL 600.6013(8) or otherwise; and

(d)    Such further relief or damages to which Plaintiff may be entitled under applicable

36

law.

## Claim #11
## Defamation – Second Instance

157.    Plaintiff reasserts all of the factual allegations set forth in Paragraphs 1-156 above.

158.    Supplemental or ancillary jurisdiction of this claim is conferred on this Court by 28 USC 1367.

159.    After the Second Instance of Defendant/Trash-Thrower Saas's Assault and Battery upon the Plaintiff, Defendant/Trash-Thrower Saas drove away from the scene of the collision.

160.    After Defendant/Trash-Thrower Saas drove away from the scene of his collision with Plaintiff's Nissan automobile, Plaintiff drove his car away from the scene of the collision, northbound on Ionia Avenue NW toward Michigan Street, to drive around the block, for two reasons: (i) to avoid onrushing protestors that Plaintiff observed rushing towards him at the scene of the collision; and (ii) to file a police report regarding the collision.

161.    While en route back to the scene of the Protest (where police were present) Plaintiff stopped to secure his then-broken nightstick in a safe location, so that it could not be appropriated by anyone and used against him, and so that he could not be accused of concealing a (stabbing) weapon as he returned to the scene of the Protest.

162.    When asked about the broken nightstick by GRPD he immediately took them to it.

163.    After the issuance of Incident Report #25-029112 (charging Plaintiff with felonious destruction of property), Plaintiff's arraignment with regard to GRPD Incident Report #25-029112 was held in the 61st District Court (of Kent County) at approximately 2:30 pm EST on May 9, 2025, before Defendant Christensen as presiding magistrate.

164.    During Plaintiff's arraignment, the Defendants City of Grand Rapids and/or Kent County (by and through the presiding magistrate) and Defendant Christensen verbally libeled/slandered Plaintiff by: (i) alleging that Plaintiff had concealed evidence to an extent that

37

he had violated ethical rules of professional responsibility applicable to lawyers in Michigan; and (ii) ordering Plaintiff not to speak in his own defense (the "Second Instance of Defamation" herein).

165.    Defendant Christensen's accusation(s) that Plaintiff concealed his nightstick from police in violation of the Michigan Rules of Professional Conduct (the "Accusations") are false.

166.    Defendant Christensen published the Accusations to third parties with knowledge of the falsity of the statements or in reckless disregard of their truth or falsity.

167.    Defendant Christensen's publication of the Accusations was not privileged.

168.    Defendant Christensen's publication of the Accusations was not privileged in large part because (even if true) they were outside the scope of permissible considerations in a magistrate's bail decision under MCR 6.106(F) and *Oesterle v. Wallace*, 272 Mich. App. 260, 725 NW2d 470 (2006).

169.    Defendant Christensen's publication of the Accusations has resulted in damage to Plaintiff's personal and business reputation in the community and economic loss, including, but not limited to, the following:

  (a)    emotional distress;

  (b)    humiliation, mortification, and embarrassment

  (c)    sleeplessness and anxiety

  (d)    lost wages and business opportunities;

  (e)    attorney fees; and

  (f)    other damages that may arise during the course of discovery and the course of this trial.

170.    Defendant Christensen's Accusations were defamation *per se*.

*Wherefore, Plaintiff requests* that this honorable Court enter judgment against Defendants

38

City of Grand Rapids and/or Kent County (by and through the presiding magistrate) and Defendant

Christensen for the Second Instance of Defamation of Plaintiff as follows:

(a)     One Hundred Thousand ($100,000.00) Dollar in damages;

(b)     An award to Plaintiff for all of his costs and expenses involved with bringing this

        action, including Plaintiff's reasonable attorney fees, disbursements and court

        costs, to the extent awardable under applicable law;

(c)     Any pre- or post-judgement interest to which Plaintiff may be entitled, pursuant to

        MCL 600.6013(8) or otherwise; and

(d)     Such further relief or damages to which Plaintiff may be entitled under applicable

        law.

I declare under penalties of perjury that the above Complaint has been examined by me

and is true to the best of my information, knowledge and belief.

November 7, 2025

John Timothy Klees
Appearing *in pro per*
270 Langlois Drive SE
Grand Rapids, MI 49546
(616) 608-1144